# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| AMGEN INC. and AMGEN MANUFACTURING, LIMITED, | : : : : | |
| Plaintiffs, | : : | |
| v. | : : : | C.A. No. 18-1064-CFC-CJB |
| HOSPIRA, INC. and PFIZER INC., | : : | **PUBLIC VERSION** |
| Defendants. | : : | |

### PFIZER'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT OF THE ASSERTED CLAIMS OF U.S. PATENT NO. 9,643,997

OF COUNSEL:

Dimitrios T. Drivas
Alison Hanstead
John Scheibeler
Kevin Georgek
Brigid Bone
White & Case LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 819-8200

Jaclyn Phillips
White & Case LLP
701 13th Street NW
Washington, DC 20005
(202) 626-3600

Elizabeth Chang
White & Case LLP
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
(213) 620-7853

Dated: March 10, 2021

Arthur G. Connolly, III (#2667)
Stephanie Riley (#5803)
Brandon R. Harper (#6418)
Connolly Gallagher LLP
1201 North Market Street, 20th Floor
Wilmington, DE 19801
(302) 757-7300
aconnolly@connollygallagher.com
sriley@connollygallagher.com
bharper@connollygallagher.com

*Attorneys for Defendants Hospira, Inc.
and Pfizer Inc.*

## **TABLE OF CONTENTS**

I.    INTRODUCTION ......................................................................................1

II.    ARGUMENT...........................................................................................2

A.    There Is No Dispute that Pfizer's aBLA Process Requires
████████ to Remove Precipitates...........................................................2

B.    Amgen's Expert Admitted that He Has "No Basis to Dispute"
that Pfizer's ████████ Generates a Precipitate ...........................5

C.    Amgen's Resort to Semantics Does Not Create a Genuine
Dispute of Material Fact...........................................................................5

D.    Amgen's Resort to the Testimony of Pfizer's Invalidity Expert
Underscores the Dearth of Evidence Supporting Infringement............8

III.    CONCLUSION........................................................................................9

# TABLE OF AUTHORITIES

**Cases**

*Armbruster v. Unisys Corp.*,
    32 F.3d 768 (3d Cir. 1994) ...............................................................................7

*Copelands' Enter. v. CNV, Inc.*,
    945 F.2d 1563 (Fed. Cir. 1991) .........................................................................4

*Cradle IP, LLC v. Tex. Instruments, Inc.*,
    5 F. Supp. 3d 626 (D. Del. 2013) ......................................................................5

*Reckitt Benckiser LLC v. Aurobindo Pharma Ltd.*,
    239 F. Supp. 3d 822 (D. Del. 2017) ...................................................................3

## I.    INTRODUCTION

Amgen accuses the aBLA process that Pfizer uses to manufacture its Nivestym® biosimilar of infringing the Asserted Claims, all of which depend from claim 9.  D.I. 49 ¶¶ 14, 76-88.  During claim construction, the parties agreed that the claim 9(c) "applying" limitation means "applying the refold solution to a separation matrix without intervening steps of dilution, centrifugation, dialysis, or precipitation."  D.I. 232, Amgen's Statement of Facts ("ASOF") ¶ 2; D.I. 40-1.

ASOF ¶ 12.  Amgen cannot defeat summary judgment by arguing that the precipitate in Pfizer's aBLA process is not the "amount" or "sort" of precipitation that was described in the Oliner prior-art reference that Amgen overcame to obtain allowance during prosecution.  D.I. 206, Sec. IV.C.2.  Amgen's new semantical "particulate" theory attempts to reclassify the precipitation described in Pfizer's aBLA as particulates to remove it from the scope of Amgen's prosecution disclaimer.  Amgen fails to raise a genuine dispute of material fact because Amgen

has not identified any evidence that Pfizer's ████████████ does not "remove precipitated impurities." Ex. U[1], HOS-FILG-00004570.

## II.    ARGUMENT

### A.    There Is No Dispute that Pfizer's aBLA Process Requires ████████ to Remove Precipitates

Pfizer's FDA-approved aBLA accurately describes the process Pfizer uses to manufacture its biosimilar to Amgen's Neupogen® and sets forth the only manufacturing process that Pfizer is authorized by law to use to manufacture filgrastim. The "Process Validation and/or Evaluation" section of the aBLA states that the purpose of the ████████████████████ is "to remove precipitated impurities" and to "remove additional precipitate" prior to chromatography. Ex. U, HOS-FILG-00004570.

Amgen points to other portions of the aBLA, including manufacturing batch records, that <u>are silent</u> on precipitation in an attempt to create a factual dispute as to whether precipitation occurs. ASOF ¶ 12. That other sections of the aBLA do not call out precipitation does not create a genuine dispute of material fact as to whether Pfizer's process contains an intervening precipitation. ASOF ¶¶ 11, 12. There is no evidence that the process described in the validation section of Pfizer's

---

[1] Exhibits U-DD refer to the exhibits to the Declaration of Kevin J. Georgek submitted herewith.

aBLA is different in any way from the process descriptions in other sections of the aBLA.  For example, the batch records describe the <u>same</u> process of ████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████.  *Compare* Ex. U, HOS-FILG-00004570, *with* Ex. V, HOS-FILG-00002197-2202.  Pfizer's aBLA states that these ████████ "remove precipitated impurities."  Ex. U, HOS-FILG-00004570.  Amgen has not offered any evidence to show that this precipitation, and its removal, does not occur.  Amgen's own expert, Dr. Zydney, admitted that he has "no basis to dispute" that Pfizer's ████████████████ removes precipitated impurities and that "at ████████████████ there is some material which precipitates."  Ex. W, 106:6-107:2, 96:11-20.

Amgen must "do more than simply show that there is some metaphysical doubt as to the material facts" to defeat summary judgment.  *Reckitt Benckiser LLC v. Aurobindo Pharma Ltd.*, 239 F. Supp. 3d 822, 824 (D. Del. 2017) (citation omitted).  The absence of additional references to precipitation in Pfizer's aBLA is not an indication that there is no precipitation in Pfizer's process.  Pfizer's aBLA, describing the removal of precipitated impurities, corroborates the statements by Dr. Valinger describing precipitation that he has personally observed in Pfizer's process.  D.I. 210, Pfizer's Concise Statement of Facts ("CSOF") ¶¶ 17-19.

Amgen dismisses Dr. Valinger's declaration as "litigation driven."  D.I. 231, ("Amgen Br.") 10.  Dr. Valinger has personal knowledge of the accused process and his statements are consistent with the descriptions in Pfizer's aBLA, which he reviewed and helped draft.  ASOF ¶ 18.  Amgen twice deposed Dr. Valinger, the individual with the most knowledge of the accused process who has observed the precipitation that occurs during ▮▮▮▮▮▮▮▮.  Amgen failed to elicit any testimony from Dr. Valinger that is inconsistent with his declaration or the descriptions of precipitation in the aBLA.  Amgen could have requested to observe Pfizer's process and/or perform testing to determine whether precipitation occurs.  It did not.

Amgen's reliance on *Copelands* to dismiss Dr. Valinger's declaration is inapposite.  Amgen Br. 10.  The issue there concerned the declarant's intent and the Court noted that factual issues of intent are "particularly unsuited to disposition on summary judgment."  *Copelands' Enter. v. CNV, Inc.*, 945 F.2d 1563, 1567 (Fed. Cir. 1991).  In contrast, Dr. Valinger's declaration concerns a process that he has supervised and personally observed for over a decade and corroborates the descriptions of precipitation in the aBLA that were drafted years before Amgen filed its complaint.  Amgen offers no evidence to rebut Dr. Valinger's observations, or to otherwise demonstrate the existence of a genuine dispute of material fact.  *Cradle IP, LLC v. Tex. Instruments, Inc.*, 5 F. Supp. 3d 626, 639 (D.

4

Del. 2013) ("Issues of fact are raised by conflicting evidence, not by attorney argument or conclusory expert opinions.").

**B.     Amgen's Expert Admitted that He Has "No Basis to Dispute" that Pfizer's ▮▮▮▮▮▮ Generates a Precipitate**

Amgen's Dr. Zydney admitted that he has no basis to contest that Pfizer's pH adjustment generates a precipitate.  CSOF ¶¶ 13-15; ASOF ¶¶ 13-15.  Amgen suggests that Dr. Zydney admitted only that he has "no basis to dispute that Hospira chose to include . . . a reference to precipitation" in its aBLA.  ASOF ¶¶ 13-15.  Dr. Zydney's testimony speaks for itself.  CSOF ¶¶ 13-15.  Dr. Zydney unambiguously acknowledged that Pfizer's aBLA states that "the ▮▮▮▮▮▮ removed precipitated impurities" and he admitted that "I have no basis to dispute that statement."  Ex. W, 106:6-107:2.  Amgen's argument that Dr. Zydney's opinions were based on "Hospira's aBLA, as a whole" is also inaccurate.  ASOF ¶¶ 13-15.  Dr. Zydney testified that he "did not have the entire aBLA" and that he reviewed only those sections provided to him by Amgen's counsel.  Ex. W, 32:11-19.

**C.     Amgen's Resort to Semantics Does Not Create a Genuine Dispute of Material Fact**

Amgen asserts a semantical argument that Pfizer's ▮▮▮▮▮▮ step results in the formation of insoluble "particulates."  Amgen Br. 7-11.  The formation of insoluble materials during pH adjustment is precipitation.  ASOF

¶ 16.  Amgen fails to create a genuine dispute of material fact by relabeling the insoluble materials formed in Pfizer's pH-adjustment as "particulates," notwithstanding the express language in the aBLA describing these materials as "precipitated impurities."  Ex. U, HOS-FILG-00004570.  Amgen has failed to provide evidence that there is even a difference between the two.

Amgen's "particulate" theory stems from a truncated quote from Dr. Zydney's reply expert report taken out of context.  ASOF ¶¶ 13, 21, 22.  In his report, Dr. Zydney opined, when describing Pfizer's ███████████████ ██████████████, that "if anything, only minor amounts of suspended particulates form, which can be easily removed by █████████, during Pfizer's ██████████."  Ex. Z, ¶ 61.  The formation of even "minor amounts of suspended particulates" during Pfizer's ██████████ step is precipitation.  ASOF ¶ 16.  Dr. Zydney does not opine that "[p]articulates are not precipitation" as Amgen suggests.  ASOF ¶ 13.  The definition that Amgen now proposes of "particulates" does not appear in Dr. Zydney's expert reports and Dr. Zydney did not refer to "particulates" or "particles" during his deposition.  ASOF ¶ 26.  Rather, he opined that a ██████████ that forms only a "*de minimis*" amount of "precipitate" is not a precipitation that the invention avoids.  Ex. Z, ¶ 47.  Amgen's "particulate" theory is also not in Amgen's infringement contentions.  Ex. DD, 8-9.  There is nothing in claim 9, or in Amgen's prosecution disclaimer, that excludes

6

only certain types or amounts of precipitation.  D.I. 206, Sec. IV.C.2; CSOF ¶ 2; ASOF ¶ 2.

Amgen cannot meet its burden of proof on infringement and raise a factual dispute by redefining the precipitate as a "particulate" based on the opinion of an expert who has never observed Pfizer's process.  Ex. W, Zydney Tr. 99:6-14 ("Since I have not seen [Pfizer's] process in operation, I have no basis to contest that there may have been precipitation.").  Dr. Zydney's opinion is not probative since he has no first-hand knowledge of the process.  Ex. W, 99:6-14; *see Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994) (stating that if the non-moving party's "evidence is merely colorable or not significantly probative, summary judgment should be granted").

Amgen also argues that filtration to remove particulates is within the scope of the claims based on the Examples in the '997 patent.  Amgen Br. 9; ASOF ¶ 32. These Examples are irrelevant.  The inventor, Dr. Hart, admitted that ███████ ██████████████████████████.  Ex. Y, 205:17-206:9, 212:4-16.  The Examples concern proteins with "Fc regions" that are totally different from filgrastim and have no relevance to what occurs in Pfizer's process.  The '997 patent never even mentions filgrastim.  These Examples have no bearing on whether a precipitation occurs during Pfizer's ████████████ as described in Pfizer's aBLA.  Ex. U, HOS-FILG-00004570.

**D.**     **Amgen's Resort to the Testimony of Pfizer's Invalidity Expert Underscores the Dearth of Evidence Supporting Infringement**

Amgen argues that Pfizer's invalidity expert, Dr. Jungbauer, and by extension Pfizer's invalidity expert, Dr. Przybycien, conceded that Pfizer infringes the '997 Patent based on testimony regarding Pliva's 2006 process.  Amgen Br. 5, 13-14.  Both Dr. Jungbauer's and Dr. Przybycien's opinions relate to the on-sale bar and whether the accused process is the same as Pliva's 2006 process that is the basis for the invalidating sale.  D.I. 105 at 1.  Neither Dr. Jungbauer nor Dr. Przybycien have offered opinions on noninfringement as to the claims of the '997 patent.  Pfizer is therefore not relying on either of those experts' opinions in support of its motion.  Nor can Amgen create a genuine dispute of fact based on those opinions.

During his deposition on the on-sale bar, Dr. Jungbauer was asked a vague question about patent "coverage" with respect to Pliva's process that elicited an objection.  In response, Dr. Jungbauer noted that the '997 patent is "extremely broad" and covers proteins without specification, solubilization, and refolding without further specification.  Ex. X, 19:2-13.  Dr. Jungbauer did not concede an absence of precipitation in Pliva's, much less Pfizer's, process.  Rather, Dr. Jungbauer, and Dr. Przybycien, repeatedly testified that precipitation occurs in Pliva's process.  Ex. AA, 51:24-52:22, 55:21-63:3, 71:17-74:25, 119:6-

8

123:1,125:9-126:5, 134:2-135:5; Ex. BB, ¶¶ 21-22, 25-28; Ex. CC, ¶¶ 24, 27, 77;

Ex. X, 51:2-19, 52:19-56:21, 64:18-65:8, 88:16-89:6, 105:13-106:24, 117:5-119:3,

126:13-128:9.

## III.   CONCLUSION

Pfizer's [REDACTED] results in a precipitation that must be removed prior

to contacting the separation matrix.  To obtain allowance of its claims, Amgen

disclaimed coverage of such an intervening step.  Amgen's arguments here are in

stark contrast to the arguments it previously made to obtain allowance and preserve

the validity of its claims.  D.I. 206, Sec. IV.C.2-3.  Pfizer respectfully requests that

the Court grant summary judgment of noninfringement of claims 17, 18, and 26 of

the '997 patent.

Respectfully submitted,

OF COUNSEL:                    CONNOLLY GALLAGHER LLP

Dimitrios T. Drivas            */s/ Arthur G. Connolly, III*
Alison Hanstead                Arthur G. Connolly, III (#2667)
John Scheibeler                Stephanie Riley (#5803)
Kevin Georgek                  Brandon R. Harper (#6418)
Brigid Bone                    1201 North Market Street, 20th Floor
WHITE & CASE LLP               Wilmington, DE 19801
1221 Avenue of the Americas    (302) 757-7300
New York, NY 10020             aconnolly@connollygallagher.com
(212) 819-8200                 sriley@connollygallagher.com
                               bharper@connollygallagher.com

Jaclyn Phillips
WHITE & CASE LLP               *Attorneys for Defendants Hospira, Inc.*
701 13th Street NW             *and Pfizer Inc.*
Washington, DC 20005
(202) 626-3600

Elizabeth Chang
WHITE & CASE LLP
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
(213) 620-7853

Dated: March 10, 2021

10

## CERTIFICATE OF COMPLIANCE

This brief complies with the November 6, 2019 Standing Order Regarding Briefing in all Cases and the revised March 2, 2020 Scheduling Order for Patent Cases in Which Infringement is Alleged.  The text of this brief is in 14-point Times New Roman font and it contains 1,871 words based on a count made by Microsoft Word, excluding the caption page, table of contents, and signature block.  All reply dispositive and *Daubert* briefs together contain less than 6,250 words based on a count by Microsoft Word, excluding the caption page, table of contents, and signature block.

/s/ *Arthur G. Connolly III*

Arthur G. Connolly III (#2667)