# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMGEN INC. and AMGEN MANUFACTURING, LIMITED, | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 18-1064-CFC-CJB |
| v. | ) ) | **PUBLIC VERSION** |
| HOSPIRA, INC. and PFIZER INC., | ) ) ) | |
| Defendants. | ) ) | |

## AMGEN'S ANSWERING BRIEF IN OPPOSITION TO HOSPIRA'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE <u>ASSERTED CLAIMS OF U.S. PATENT NO. 9,643,997</u>

*Of Counsel:*
Nicholas Groombridge
Jennifer H. Wu
Jennifer Gordon
Peter Sandel
Rebecca Fett
Naz E. Wehrli
Paul, Weiss, Rifkind, Wharton
& Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

Wendy A. Whiteford
Kimberlin L. Morley
J. Drew Diamond
Paula Fritsch
Amgen Inc.
One Amgen Center Drive
Thousand Oaks, CA 91320-1789
(805) 447-1000

Robert W. Whetzel (#2288)
Katharine Lester Mowery (#5629)
Tyler E. Cragg (#6398)
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
whetzel@rlf.com
mowery@rlf.com
cragg@rlf.com

*Attorneys for Amgen Inc. and Amgen Manufacturing, Limited*

Dated: March 3, 2021

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................3

I.   SUMMARY OF ARGUMENT..........................................................4

II.  STATEMENT OF DISPUTED FACTS ...........................................5

III. LEGAL STANDARD ....................................................................6

IV.  ARGUMENT...................................................................................7

    A.   The Parties Factually Dispute Whether Hospira's Process Performs an Intervening "Precipitation Step".......................................7

        1.   The Parties Factually Dispute Whether Hospira's Process Results in Precipitation or Formation of Particulates .................7

        2.   The Parties Factually Dispute Whether the Accused Process Performs a "Precipitation Step"..................................11

        3.   Hospira's Ignores that Its Expert Admitted Infringement ........13

    B.   The Parties' Disputes Over What Occurs in Hospira's Process Is Factual, Not Based on a Difference in Claim Construction............14

    C.   Amgen's Position Here is Consistent With Other Proceedings..........16

V.   CONCLUSION .............................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)........................................................................................6

*Copelands' Enterprises, Inc. v. CNV, Inc.*,
  945 F.2d 1563 (Fed. Cir. 1991) ....................................................................10

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*,
  149 F.3d 1309 (Fed. Cir. 1998) ......................................................................6

*Markman v. Westview Instruments*,
  517 U.S. 370 (1996)........................................................................................6

*Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)........................................................................................7

*Union Oil Co. of Calif. v. Atlantic Richfield Co.*,
  208 F.3d 989 (Fed. Cir. 2000) ......................................................................16

*Upsher-Smith Labs., Inc. v. Pamlab, L.L.C.*,
  412 F.3d 1319 (Fed. Cir. 2005) ....................................................................14

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(a)...........................................................................................6

## I.    SUMMARY OF ARGUMENT

Hospira's motion fails because its hallmark premise—that Hospira's process has an intervening precipitation step that takes it outside the scope of the claims[1]—remains the subject of vigorous dispute.  The parties' disagreements are manifest. Hospira's expert devoted 20 pages of his report to this topic, opining that Hospira's accused process performs a "precipitation step" because Hospira's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."  (Ex.[2] 14 at ¶¶ 174-206.)  But Amgen's expert provided 12 single-spaced pages of detailed opinions explaining why Hospira's process *does not* perform a "precipitation step."  (Ex. 9 at ¶¶ 39-41, 67-71; Ex. 3 at ¶¶ 40-62.)  Where, as here, the parties' experts disagree as to what occurs in the accused process, summary judgment is inappropriate.

Hospira mischaracterizes these factual disputes as a claim construction issue. (D.I. 206 ("Br.") at 9-13.)  But the parties' experts agree how a POSA would have understood precipitation in the context of the '997 Patent.  (Amgen's Statement of Facts ("SoF"), being filed concurrently, ¶ 16.)  Based on this understanding,

---

[1] The parties agreed that "applying the refold solution to a separation matrix" to mean "applying the refold solution to a separation matrix" which means "applying the refold solution to a separation matrix without intervening steps of dilution, centrifugation, dialysis, or precipitation."  (D.I. 40-1 at 4.)

[2] "Ex. __" refers to exhibits to the Declaration of Jennifer H. Wu.

4

Amgen's expert considered whether Hospira's process performs a precipitation step and concluded that it does not. (SoF ¶¶ 21-22.)

Hospira's attempt to contest infringement is especially curious given that one of Hospira's invalidity experts has admitted that the accused process infringes, opining that, with respect to the '997 Patent, an earlier third-party Pliva process is "the same process" as the accused Hospira process. (SoF ¶¶ 27, 29.) And another of Hospira's experts agreed. (SoF ¶ 27) He then testified that the Pliva process is covered by the '997 Patent. (SoF ¶ 28; Ex. 12 at 19:2-13.) But if the Pliva process is covered, then Hospira's "same process" is also covered by the '997 Patent. Hospira cannot have it both ways.

Amgen respectfully requests that the Court deny Hospira's motion.

## II.    STATEMENT OF DISPUTED FACTS

Amgen responds to Hospira's Concise Statement of Facts ("CSoF") in its accompanying Statement of Facts ("SoF"). In particular:

- Amgen disputes whether Hospira's ▮▮▮ ▮ results in a precipitation and the precipitate is ▮▮▮▮▮▮. (SoF ¶¶ 12, 21-22.)

- Amgen disputes whether Amgen's expert agrees that the aBLA describes the removal of precipitated impurities during Pfizer's ▮▮▮▮▮. (SoF ¶¶ 13, 14, 15.)

- Amgen disputes whether Dr. Valinger personally observed precipitation in Hospira's accused process. (SoF ¶ 17.)

- Amgen disputes whether the statements in Dr. Valinger's declaration should be credited in view of other evidence. (SoF ¶¶ 19, 20.)

- Hospira's own invalidity expert admits that the Pliva process—which he opines is the same as Hospira's process—is covered by the '997 Patent. (SoF ¶¶ 27-29.)

## III.   LEGAL STANDARD

### A.   Infringement is a Question of Fact

Non-infringement, a question of fact, is only "amenable to summary judgment where . . . no reasonable fact finder could find infringement." *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp*., 149 F.3d 1309, 1315 (Fed. Cir. 1998). Infringement analysis involves (1) a determination of "what the words in the claim mean" and (2) a determination of whether the patent claim "covers the alleged infringer's product or process." *Markman v. Westview Instruments*, 517 U.S. 370, 374 (1996).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). When determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all

reasonable inferences against the moving party.  *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV.    ARGUMENT

### A.    The Parties Factually Dispute Whether Hospira's Process Performs an Intervening "Precipitation Step"

Whether Hospira's accused process performs an intervening precipitation step was hotly disputed in expert discovery.  Amgen and Hospira's experts addressed it at length in their reports, referencing the aBLA submission and batch records, which, according to Hospira's representations to FDA, describe the process for commercial manufacturing of its biosimilar filgrastim.  (*See, e.g.,* Ex. 14 at ¶¶ 174-206; Ex. 3 at ¶¶ 40-62.)

The parties clearly have factual disputes as to what occurs in Hospira's manufacturing process: both whether the process results in precipitation and also whether the process uses a "precipitation *step*" as required by the agreed-upon claim construction.  These factual disputes are fatal.

### 1.    The Parties Factually Dispute Whether Hospira's Process Results in Precipitation or Formation of Particulates

Contrary to the opinion of Hospira's expert, who relied on one paragraph in the aBLA, Amgen's expert reviewed the executed batch records for the actual manufacturing process, finding no mention of precipitation.  (SoF ¶¶ 12, 23-25.)

The parties also disagree as to whether Hospira's process uses

████████████ to remove *precipitates* (Hospira's position) or *particulates*

7

(Amgen's position).[3]  (*Compare* Ex. 14 at ¶ 205 *with* SoF ¶¶ 13-15; 3 at ¶ 44.) ▮



) Further, Amgen's expert opines that, rather than removing precipitate, ▮▮▮▮▮▮▮ is "typically used to provide added protection . . . both against bacterial contamination and trace particulate matter."  (SoF ¶ 34; Ex. 3 at ¶ 45.)[4]

---

[3] The experts agree that precipitation refers to the process by which materials that were previously in solution become insoluble and are deposited in solid form; the insoluble material that emerges from the solution is referred to as a "precipitate." (SoF ¶16.)  In contrast, particulates are insoluble materials that may be suspended in solution but are not, and were not, in solution (*i.e.*, dissolved); unlike precipitates, particulates are not in solution and would not "result" from Hospira's process.  (SoF ¶¶ 13-15, 26.)

[4] Hospira uses ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ n.  (SoF ¶ 13-15.)

Thus, Amgen's expert opines that the aBLA describes the formation of minor amounts of particulates (not precipitation): "if anything, only minor amounts of suspended particulates form, ███████████████████████████████████." (SoF ¶¶ 13-15, 21-22; Ex. 3 at ¶ 61.)  This dispute of fact is meaningful to infringement because the formation of particulates cannot take the accused process outside the scope of the '997 Patent.  The patent explicitly teaches that filtration to remove particulates is within its scope.  (SoF ¶ 32.)  *See* '997 Patent col.19:34-36 ("An aliquot of a protein … from the refold solution was filtered through a series of depth and/or membrane filter to remove particulates.")

Amgen's expert opinion that Hospira's process does not result in precipitation is supported by the fact that ████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ █████████████████████████████████████████ (SoF ¶ 36; Ex. 3 at ¶ 47.)  He further explained, there is no evidence that this █████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ █████████████." (SoF ¶¶ 13, 21-22; Ex. 3 at ¶ 47.)

Hospira ignores Amgen's factual evidence (which is fatal to its motion) and instead relies on an unsupported, litigation-driven assertion by its corporate witness Dr. Goran Valinger that "█████████████████████ results in a significant and observable precipitation." (Br. at 9.) This does not eliminate the parties' factual disputes. (SoF ¶¶ 19, 21) Whether Hospira actually performs precipitation in its approved commercial manufacture of filgrastim is a fact-intensive inquiry that cannot be resolved in Hospira's favor simply because Hospira's corporate witness conveniently says so. *See Copelands' Enterprises, Inc. v. CNV, Inc.*, 945 F.2d 1563, 1566 (Fed. Cir. 1991) ("self-serving declarations are insufficient in the context of summary judgment to overcome other evidence").

Moreover, Amgen's expert disputes this witness's unsupported statement prepared in connection with this litigation, which is inconsistent with the aBLA. (SoF ¶¶ 17, 21-22.) And a reasonable trier of fact would be entitled to reject that statement and credit Amgen's evidence instead. This is particularly true here, where Hospira's corporate witness provided no collaborating evidence of alleged precipitation. (*Id.*) As Amgen's expert testified, "There is nothing that has been provided to me in the way of photographic evidence that there was a significant amount of precipitation, or that it was observable." (SoF ¶¶ 17, 21-22; Ex. 4 at 191:6-192:6.)

10

Amgen's expert's testimony that he has no basis to contest Hospira's corporate witness's declaration statement does not mean that he disavowed his opinion that Hospira's process meets the '997 Patent claim limitation.  To the contrary, he opined that the corporate witness's "qualitative statement is not detailed enough to demonstrate the amount of material ███████████████████ ███████████ (SoF ¶¶ 17, 21-22; Ex. 3 at ¶ 49.)  And he further emphasized that the witness's statement does not "change[] my view that the amount of ███ ███████████████████████████████████████████."  (*Id.*)

### 2.    The Parties Factually Dispute Whether the Accused Process Performs a "Precipitation <u>Step</u>"

Hospira does not identify in its process a step called a "Precipitation Step." (SoF ¶ 23.) The only alleged step it identifies is ████████. (Br. at 5.)  But Amgen's expert opined that this step was not designed to remove precipitation because ███ ███████████████████████████████, which would be expected if this were intended as a precipitation step, as Hospira posits.  (SoF ¶¶ 13-15, 21-22.)

Hospira appears to argue that the ███████████████████████████ ███████████████████████████ means that the process includes a "precipitation step."  (Br. at 6-8.)  Amgen disagrees that any ████████████ (if it even disputedly occurs) constitutes a "precipitation step" that would take a process outside the scope of the claims.  (SoF ¶¶ 12-15, 17.)  While ████████

Case 1:18-cv-01064-CFC-CJB    Document 287    Filed 03/30/21    Page 12 of 18 PageID #: 9397

████████████████████████████████████████████████████████

████████████████████████████████████.” (*See id.*)

At best, Hospira's argument demonstrates that the parties have a dispute as to whether the accused process ██████████████. But ██████████ would not take Hospira's process outside the scope of the claims as construed. Indeed, the prior art Oliner reference that is the source of the construction here specifically distinguishes a precipitation step, requiring centrifugation to remove the precipitate, from the routine use of filtration. (SoF ¶¶ 12, 37-38.)

Out of more than 80,000 pages in the aBLA, Hopsira relies on ████████ ████████████████████████████████ to argue there is a "precipitation step" in Hospira's process. (Br. at 7.) But this happenstance mention of ████████ does not (and cannot) eliminate the parties' factual disputes on this issue. (SoF ¶¶ 12-15, 21-22.) Moreover, ████████████████████ ████████ ████████████████████████████████████████████████.” (SoF ¶¶ 31-33.) Amgen's expert opined that this refers to ████████████ ████████████████. (SoF ¶¶ 13-15.)

Removal of particulate matter that was never in solution is not evidence of precipitation or a "precipitation *step*" given the '997 Patent's explicit teaching that filtration to remove particulates does not take a process outside its scope. (SoF ¶ 32.) *See* '997 Patent col.19:34-36, 20:56-60. Thus, contrary to Hospira's

12

assertions, Amgen's expert's acknowledgement that ███████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████. (SoF ¶¶ 13-15.)

### 3.   Hospira Ignores that Its Expert Admitted Infringement

In addition to ignoring the parties' factual disputes, Hospira's motion for summary judgment of ***non-infringement*** ignores the admission of ***infringement*** by its own invalidity expert who is aware of the agreed-upon claim construction.  (Ex. 5 at ¶ 48; Ex. 6 at ¶ 11.)

In support of one of Hospira's invalidity theories, Hospira's expert Dr. Alois Jungbauer opined that, with respect to the asserted claims, "the process by which Pliva manufactured its filgrastim drug substance [in 2006] is the same process that is described in [Hospira's] aBLA" and there "no difference" between the processes.  (SoF ¶¶ 27, 29; Ex. 11 at ¶¶ 9, 97.)  Hospira's other invalidity expert Dr. Todd Pryzbycien agreed that the Pliva process and Hospira's aBLA process are "the same process . . . notwithstanding certain trivial differences that did not materially change the process steps that are relevant to the '997 Patent."  (SoF ¶ 27; Ex. 10 at ¶¶ 7, 75.)[5]

---

[5] Neither Dr. Jungbauer nor Dr. Przybycien identified any ███████████████████ ███████████████████████████████. (SoF ¶ 30.)

Then, in comparing the 2006 Pliva process to the patent, Dr. Jungbauer opined that the Pliva process is "covered" by the '997 Patent. (SoF ¶ 28; Ex. 12 at 19:2-13.) This is an admission of infringement. Because Dr. Jungbauer opined that the Pliva process is "the same process" as Hospira's accused aBLA process, the opinion that the Pliva process is covered by the '997 Patent means that the accused process infringes it. A finding to the contrary would violate the "century-old axiom of patent law hold[ing] that a product 'which would literally infringe if later in time anticipates if earlier.'" *Upsher-Smith Labs., Inc. v. Pamlab, L.L.C.*, 412 F.3d 1319, 1322 (Fed. Cir. 2005).

### B.      The Parties' Disputes Over What Occurs in Hospira's Process Is Factual, Not Based on a Difference in Claim Construction

Hospira miscasts the parties' factual disputes as a claim construction issue. (Br. at 9-13.) But Amgen's expert infringement opinion properly applied the agreed-upon claim construction to conclude that Hospira is mistaken that ▮

▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮." (SoF ¶ 13; Ex. 3 at ¶ 43.)

In his infringement opinions, Amgen's expert opined, as is relevant to the '997 Patent, "precipitation refers to the process by which materials that were previously in solution become insoluble and are deposited in solid form from the solution. The insoluble material that emerges from the solution is referred to as the

14

'precipitate.'" (SoF ¶ 16; Ex. 9 at ¶ 67.)[6]  Then, he compared the claims to the accused process and disagreed with Hospira's expert that the aBLA describes a precipitation step between refolding and applying to the separation matrix.  (SoF ¶¶ 12-22; Ex. 9 at ¶¶ 39-41, 67-71; Ex. 3 at ¶¶ 40-62.)

Amgen's expert's opinions as to his understanding of the term "precipitate" align with this the Court's guidance on permissible expert testimony.  (SoF ¶¶ 12-13, 16.)  The Court explained in this action that it would let the experts on both sides opine as to what "dilution" is and "why dilution is defined the way it is within the art."  (*See* 12/6/2019 Hrg. Tr. at 20:9-14.)  The same holds for "precipitation."  Given the patent's teachings and the parties' factual dispute as to whether Hospira's process ████████████████████████████ ████████████████ " it is appropriate for Amgen's expert to rely on the prior art (among other things) to inform his opinion as to whether the accused process has a precipitation step.[7]

---

[6] Hospira's expert agreed that a "POSA would have understood precipitation in the context of the '997 Patent and file history as Dr. Zydney described."  (SoF ¶ 16; Ex. 14 at ¶ 174.)

[7] Hospira's non-infringement expert also offered testimony on precipitation with reference to methods practiced in the prior art: "one example of precipitation that was known in the art in June 2009 is acid precipitation (which is still used today), though other types of precipitation were also known."  (Ex. 14 at ¶ 90.)

That the parties' technical experts discuss what the prior art teaches with respect to precipitation simply confirms that the parties dispute that underlying fact in the context of disputing the ultimate issue of infringement. Both are factual questions for the jury. *See Union Oil Co. of Calif. v. Atlantic Richfield Co.*, 208 F.3d 989, 995 (Fed. Cir. 2000).

## C.    Amgen's Position Here is Consistent With Other Proceedings

Hospira argues that Amgen's infringement position is inconsistent with Amgen's validity arguments in other proceedings, relying on Amgen's arguments in three prior proceedings that a patent application by Dietrich (U.S. Pat. Application Publication 2008/0260684) does not disclose "applying the refold solution" because the pH adjustment step would result in "precipitation." This is not true and in any event irrelevant. Whether Dietrich's particular pH adjustment step was designed to and did result in precipitation has no bearing on the factual issue of whether Hospira's ███████████████████████ ████████████████████. Further, in all three instances, Amgen distinguished Dietrich in a manner that is consistent with its positions in this action.

As Amgen's expert explained, Dietrich adjusted the pH of the refolding solution with 2 M citric acid, ██████████████████████ ████████████████████, and one that would be expected to result in a "significant amount of precipitation occur[ing] locally as the concentrated acidic

16

solution encounters the solution to be pH adjusted."  (SoF ¶ 35; Ex. 3 at ¶ 61.)  He

also testified that Dietrich used depth filtration, ███████████████████████

██████  (*See* SoF ¶ 35; Ex. 4 at 155:8-156:6.)  ███████████████████████

████████████████████████████████████████  that is unlikely to

cause the same sort of local precipitation that would occur with Dietrich.  (SoF

¶ 35.)

## IV.   CONCLUSION

For the foregoing reasons, Amgen respectfully requests that the Court deny

Hospira's motion for summary judgment of non-infringement.


*Of Counsel:*                                   /s/ Katharine L. Mowery
Nicholas Groombridge                            Robert W. Whetzel (#2288)
Jennifer H. Wu                                  Katharine Lester Mowery (#5629)
Jennifer Gordon                                 Tyler E. Cragg (#6398)
Peter Sandel                                    Richards, Layton & Finger, P.A.
Rebecca Fett                                    One Rodney Square
Naz E. Wehrli                                   920 North King Street
Paul, Weiss, Rifkind, Wharton                   Wilmington, Delaware 19801
& Garrison LLP                                  (302) 651-7700
1285 Avenue of the Americas                     whetzel@rlf.com
New York, NY 10019                              mowery@rlf.com
(212) 373-3000                                  cragg@rlf.com


Wendy A. Whiteford
Kimberlin L. Morley                             *Attorneys for Amgen Inc. and Amgen*
J. Drew Diamond                                 *Manufacturing, Limited*
Paula Fritsch
Amgen Inc.
One Amgen Center Drive
Thousand Oaks, CA 91320-1789
(805) 447-1000


Dated: March 3, 2021

18